ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED
2013 APR 25  PM 3: 23
DEPUTY CLERK ___NT___

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. |
| | § | 3-13CV1597-K |
| CRASH RESCUE EQUIPMENT, | § | |
| SERVICE, INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

## STIPULATION FOR ENTRY OF CONSENT JUDGMENT

It is hereby stipulated to and agreed upon by and between the United States of America ("United States") and Crash Rescue Equipment Service, Inc. ("CRES"), that it is the intention of the parties to seek entry of a Consent Judgment by this Court, and in support thereof, the parties state:

1.  The United States and CRES, in order to avoid litigation, entered into a Settlement Agreement which is attached hereto as Exhibit "A".

2.  The Settlement Agreement provides for the payment of $750,000.00, plus interest, paid out over a five year period.

3.  The Settlement Agreement provides for the unopposed entry of a Consent Judgment in the amount of $750,000.00, plus post judgment interest.

4.  The United States and CRES hereby request that the Court enter the

Consent Judgment attached hereto as Exhibit B.

        Respectfully submitted,

        SARAH R. SALDAÑA
        United States Attorney

        */s/ J. Scott Hogan*
        J. Scott Hogan
        Assistant United States Attorney
        Texas State Bar No. 24032425
        1100 Commerce St., Suite 3000
        Dallas, TX 75242
        Telephone: 214.659.8640
        scott.hogan@usdoj.gov

        Counsel for the United States of America

        */s/ James King*
        James King
        Porter Wright Morris & Arthur LLP
        41 S High St Suites 2800-3200
        Columbus, OH 43215
        Telephone: 614.227.2051
        jking@porterwright.com

        Counsel for Crash Rescue
        Equipment Service, Inc.



## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Attorney's Office for the Northern District of Texas and on behalf of the United States Department of the Air Force and the United States Marine Corps (collectively the "United States"), and Crash Rescue Equipment Service, Inc. ("CRES") (collectively, the United States and CRES are referred to herein as "the Parties"), through their authorized representatives.

### II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

    A.    CRES is a corporation established and organized under the laws of Texas.

    B.    On or about February 23, 2000, the United States Department of the Air Force awarded Contract No. F09603-00-D-0041-06-D-4501 to CRES, wherein CRES agreed to overhaul and/or refurbish emergency vehicles belonging to the United States. Under the Contract, CRES agreed to comply with the specifications set forth in the Statement of Work attached to the Contract as Appendix A (the "SOW").

    C.    On or about December 3, 2004, the United States Marine Corps awarded Contract No. M67004-05-P-0272 to CRES, wherein CRES agreed to overhaul and/or refurbish emergency vehicles belonging to the United States. Under contract M67004-05-P-0272, CRES agreed to comply with the specifications set forth in the SOW.

    D.    On or about September 22, 2006, the United States Marine Corps awarded Contract No. M67004-06-P-1691 to CRES, wherein CRES agreed to overhaul and/or refurbish emergency vehicles belonging to the United States. Under contract M67004-06-P-1691, CRES agreed to comply with the specifications set forth in the SOW.

    E.    On or about March 25, 2009, the United States Marine Corps awarded Contract No. M67004-09-P-0651 to CRES, wherein CRES agreed to overhaul and/or refurbish emergency

vehicles belonging to the United States. Under contract M67004-09-P-0651, CRES agreed to comply with the specifications set forth in the SOW.

F.   On or about August 6, 2009, the United States Marine Corps awarded Contract No. M67004-09-P-0983 to CRES, wherein CRES agreed to overhaul and/or refurbish emergency vehicles belonging to the United States. Under contract M67004-09-P-0983, CRES agreed to comply with the specifications set forth in the SOW.

G.   Collectively, Contracts Numbers F09603-00-D-0041-06-D-4501, M67004-05-P-0272, M67004-06-P-1691, M67004-09-P-0651, and M67004-09-P-0983 will be referred to herein as the "Contracts."

H.   The United States contends that it has certain civil claims against CRES under the False Claims Act ("FCA"), 31 U.S.C. §3729 et seq., and under the common law for submitting and/or causing to be submitted false claims for payment and/or payment retention in conjunction with the rebuilding and/or refurnishing of rescue vehicles under the Contracts. Specifically, the United States alleges that, from August 3, 2006 through July 26, 2010, CRES submitted invoices to the United States under the Contracts certifying that CRES overhauled and/or refurbished emergency vehicles in accordance with the SOW, including (1) completing the overhaul or replacement of each vehicle's transmission, and (2) completing the overhaul and/or replacement of each vehicle's steering gear box. The United States alleges that CRES did not overhaul or replace each vehicle's transmission and did not overhaul or replace each vehicle's steering gear box as required by the Contracts and SOW. The conduct described in this Paragraph is referred to herein as the "Covered Conduct."

I.   CRES denies the allegations in Paragraph H above.

J.   This Agreement is neither an admission of liability by CRES nor a concession by the United States that its claims are not well founded.

K.   To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

### III. TERMS AND CONDITIONS

1. CRES agrees to pay the United States $750,000 over the next five years, with payments becoming due and owing on the dates identified in the payment schedule attached hereto as Attachment "A." Outstanding payments will bear interest at the rate of two percent (2%) per annum from the Effective Date of this Agreement until the respective date of each payment.

2. The Parties agree to sign a Consent Judgment, in the form attached hereto as Attachment "B." The United States will file the Consent Judgment in the United States District Court for the Northern District of Texas for immediate entry but will attempt to execute or collect on the Consent Judgment only in the event of default of this Agreement by CRES.

3. If CRES fails to make any of the payments described in Paragraph 1 above at the specified time, upon written notice to CRES of this default, CRES shall have ten (10) calendar days to cure the default. If the default is not cured within the ten-day period: (a) the remaining unpaid principal portion of the Settlement Amount shall become accelerated and immediately due and payable, with interest at a simple rate of 2.125% from the Effective Date of this Agreement to the date of default, and at a simple rate of 12% per annum from the date of default until the date of payment; (b) the United States may pursue any and all actions for collection as it may choose, including, without limitation, seeking to execute on the Consent Judgment executed in conjunction with this Settlement Agreement (and filed in the District Court) and/or filing an action for specific performance of this Agreement; and (c) the United States may offset the remaining unpaid balance of the Settlement Amount (inclusive of interest) from any amounts due and owing to CRES by any department, agency, or agent of the United States. CRES agrees not to contest any collection action undertaken by the United States pursuant to this Paragraph 3, and to pay the United States all reasonable costs incurred in any such collection action, including attorney's fees and expenses.

4. CRES has provided sworn financial disclosure statements (Financial Statements) to the United States and the United States has relied on the accuracy and completeness of those

Financial Statements in reaching this Agreement. CRES warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which CRES had an interest at the time of this Agreement that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by CRES on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the estimated net worth set forth in the Financial Statements by $200,000 or more, the United States may at its option: (a) execute on the Consent Judgment, or (b) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of CRES previously undisclosed. CRES agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

5. Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, and in consideration of CRES's obligations in this Agreement, conditioned upon full payment of the Settlement Amount, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release CRES, together with its parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; owners; agents; and officers, directors, and affiliates; and the successors and assigns of any of them, from any civil or administrative monetary claim the United States has or may have for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, misrepresentation (including negligent misrepresentation), unjust enrichment, and fraud.

6. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including CRES) are the following claims (known or unknown) of the United States:

    a. Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code).

    b. Any criminal liability;

c.  Any process or proceeding, administrative or judicial, for any agency suspension or debarment action;

d.  Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e.  Any liability based upon such obligations as are created by this Agreement; or

f.  Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services.

7.  CRES fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that CRES has asserted, could have asserted, or may assert in the future against the United States, and its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

8.  CRES waives and shall not assert any defenses it may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

9.  CRES agrees to the following:

a.  <u>Unallowable Costs Defined:</u> All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of CRES, and their present or former officers, directors, employees, shareholders, and agents in connection with

(1)  the matters covered by this Agreement;

(2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3) CRES's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement; and

(5) the payments CRES makes to the United States pursuant to this Agreement;

are "Unallowable Costs" for government contracting purposes (hereinafter referred to as "Unallowable Costs").

b. <u>Future Treatment of Unallowable Costs:</u> Unallowable Costs will be separately determined and accounted for by CRES, and CRES shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: CRES further agrees that within 90 days of the Effective Date of this Agreement it shall identify any unallowable costs (as defined in this Paragraph) included in payments previously sought by CRES or any of its subsidiaries or affiliates from the United States. CRES agrees that the United States, at a minimum, shall be entitled to recoup from CRES any overpayment plus applicable interest as a result of the inclusion of such Unallowable Costs in any such payments. Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by CRES or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by CRES, or the effect of any such Unallowable Costs on the amount of such payments.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine CRES's books and records to determine that



no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph. In addition to any other rights the United States may have to audit, examine, or re-examine CRES's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph, this Paragraph specifically authorizes the Defense Contract Audit Agency to audit, examine, or re-examine CRES's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

10. This Agreement, together with all of the obligations and terms hereof, shall inure to the benefit of and shall bind assigns, successors-in-interest, or transferees of the Parties hereto.

11. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

12. CRES warrants that it has reviewed its financial situation and that it currently is solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to CRES, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which CRES was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

13. Except as expressly provided to the contrary in this Agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

14. CRES represents that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

15. This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is the United States District Court for the Northern District of Texas.

16. For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18. The individual signing this Agreement on behalf of CRES represents and warrants that he or she is authorized by CRES to execute this Agreement. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

21. This Agreement is effective on the date of signature of the last signatory to the Agreement ("Effective Date" of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED:  
2-22-13

BY: _____  
J. Scott Hogan  
Assistant United States Attorney  
Northern District of Texas

CRASH RESCUE EQUIPMENT SERVICE, INC.

DATED:  
2-20-13

BY: _____  
Robert Conley  
President  
Crash Rescue Equipment Service, Inc.

DATED: 2-21-2013   BY: _____  
James A. King  
PORTER, WRIGHT, MORRIS & ARTHUR LLP  
Counsel for Crash Rescue Equipment Service, Inc.

## Attachment A

**Crash Rescue Annual Payment Schedule**

| | | |
|---|---|---|
| Settlement Amount | $ | 750,000 |
| Payment Period | | 5 years on a yearly basis |
| Interest Rate | | 1.75% annually |

| Payment Dates | Payment | Principal | Interest | Balance |
|---|---|---|---|---|
| | | | | $ 750,000 |
| 4/1/2013 | $155,249.21 | $155,249.21 | $0.00 | $ 594,751 |
| 4/1/2014 | $155,249.21 | 144,841.07 | 10,408.14 | $ 449,910 |
| 4/1/2015 | $155,249.21 | 147,375.79 | 7,873.42 | $ 302,534 |
| 4/1/2016 | $155,249.21 | 149,954.87 | 5,294.34 | $ 152,579 |
| 4/1/2017 | $155,249.21 | 152,579.08 | 2,670.13 | $ (0) |
| Totals | $ 776,246.05 | $ 750,000.01 | $ 26,246.04 | |

Attachment A to Settlement Agreement Between USA and Crash Rescue Equipment Service, Inc.



## Attachment B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No._____ |
| CRASH RESCUE EQUIPMENT, SERVICE, INC., | § § § | |
| Defendant. | § § | |

## CONSENT JUDGMENT

In accordance with the Stipulation For Entry of Consent Judgment stipulated to and agreed upon by the United States of America and Crash Rescue Equipment Service, Inc., and Federal Rule of Civil Procedure 58,

IT IS ORDERED, ADJUDGED AND DECREED that the United States of America has judgment against defendant Crash Rescue Equipment Service, Inc., for the sum of $750,000.00 and interest thereon from the date of this judgment at the rate of ____ __ % per annum, compounded annually until paid, for all of which United States of America may have its execution.

SIGNED this _____ day of _____, 2013.

**USA v. Crash Rescue Equipment Service, Inc. - Page 1**

Attachment B to Settlement Agreement Between USA and Crash Rescue Equipment Service, Inc.

# **Attachment B**

_____
UNITED STATES DISTRICT JUDGE


AGREED TO AS TO FORM AND CONTENT:


SARAH R. SALDAÑA
United States Attorney


_____
J. Scott Hogan
Assistant United States Attorney
Texas State Bar No. 24032425
1100 Commerce St., Suite 3000
Dallas, TX 75242
Telephone: 214.659.8640
scott.hogan@usdoj.gov

Counsel for the United States of America


_____
James King
Porter Wright Morris & Arthur LLP
41 S High St Suites 2800-3200
Columbus, OH 43215
Telephone: 614.227.2051
jking@porterwright.com

Counsel for Crash Rescue Equipment Service, Inc.

**USA v. Crash Rescue Equipment Service, Inc. - Page 2**

Attachment B to Settlement Agreement Between USA and Crash Rescue Equipment Service, Inc.